Jack Shaw (CA SBN 309382)
jshaw@cjsjlaw.com
**CHERRY JOHNSON**
**SIEGMUND JAMES PC**
3000 El Camino Real
Four Palo Alto Square, Suite 200
Palo Alto, CA 94306
Telephone: (254) 732-2242

Sean M. Sullivan (*pro hac vice* forthcoming)
sullivan@ls3ip.com
Cole B. Richter (*pro hac vice* forthcoming)
richter@ls3ip.com
Michael P. Boyea (*pro hac vice* forthcoming)
boyea@ls3ip.com
Jae Y. Pak (*pro hac vice* forthcoming)
pak@ls3ip.com
Andrew Gerla (*pro hac vice* forthcoming)
gerla@ls3ip.com
**LEE SULLIVAN SHEA & SMITH LLP**
656 West Randolph Street, Floor 5W
Chicago, IL 60661
Telephone: (312) 754-0002

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAU CETI VENTURES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SONY GROUP CORPORATION and SONY ELECTRONICS INC.,<br><br>Defendants. | **Case No. 3:26-cv-03738-BJC-SBC**<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tau Ceti Ventures LLC ("TCV" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendants Sony Group Corporation and Sony Electronics Inc. (collectively "Sony" or "Defendants") and alleges as follows:

## SUMMARY

1. Plaintiff is the owner by assignment of all right, title and interest in United States Patent Nos. 8,101,959; 8,492,780; 8,766,309; 9,257,604; 9,847,460; 10,038,116 and 10,439,108 (collectively, the "Patents-in-Suit"; attached hereto as Exhibits A-G, respectively).

2. Defendants infringe the Patents-in-Suit by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, a number of their commercial products (e.g., laptops, televisions, and/or monitors) including, *inter alia*, the Sony Bravia 7 XR70 and the Sony Bravia 2 II 43" and other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

3. By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendants' infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. Defendants have infringed and continue to infringe one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6. Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office. Plaintiff seeks monetary damages for Defendants' infringement of the Patents-in-Suit.

## THE PARTIES

7. Plaintiff Tau Ceti Ventures LLC is a Texas limited liability company with its principal place of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

8. Defendant Sony Group Corporation is a corporation organized and existing under the laws of Japan, having its principal place of business located at 1-7-1 Konan, Minato-ku, Tokyo 108-0075, Japan.

9. Defendant Sony Electronics Inc. is a corporation organized under the laws of Delaware, with its principal place of business located at 16535 Via Esprillo, San Diego, California 92127. Sony Electronics Inc. may also be served with process via its Delaware registered agent at 251 Little Falls Drive, Wilmington, Delaware

19808. Sony Electronics Inc. may also be served with process in California through its registered agent, CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

10. On information and belief, Defendants, through online stores, retail partners, distributors, and other intermediaries, directly distribute, market, offer to sell, and/or sell the Accused Products in the United States and/or import the Accused Products into the United States, including in the Southern District of California, and otherwise direct infringing activities to this District in connection with the Accused Products.

**JURISDICTION AND VENUE**

11. As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over Defendants because Defendants have (i) availed themselves of the rights and benefits of the laws of the State of California, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of California (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of California (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the

State of California (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of California (and in this District), and (vi) committed acts of patent infringement in the State of California (and in this District).

13. Venue is proper as to Sony Group Corporation in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because, *inter alia*, Sony Group Corporation is a foreign corporation and suits against foreign entities are proper in any judicial district.

14. Venue is proper as to Sony Electronics Inc. in this District under 28 U.S.C. § 1400(b) because, among other things, Sony Electronics Inc. has committed acts of patent infringement in this District and has a regular and established place of business in this District, including at 16535 Via Esprillo, San Diego, California 92127.

## PATENTS-IN-SUIT

### U.S. Patent No. 8,101,959

15. U.S. Patent No. 8,101,959 (the "'959 Patent") is titled "Light emitting device" and was issued on January 24, 2012. A true and correct copy of the '959 Patent is attached as Exhibit A.

16. The '959 Patent was filed on September 29, 2010 as U.S. Patent Application No. 12/893,181, which is a continuation of U.S. Patent No. 7,816,695, filed January 16, 2009, which is a continuation of U.S. Patent No. 7,488,988, filed October 17, 2006, which claims priority to Taiwan Patent Application No. 094136683,

filed October 20, 2005.

17. Plaintiff is the owner of all rights, title, and interest in and to the ’959 Patent, with the full and exclusive right to bring suit to enforce the ’959 Patent, including the right to recover for past infringement.

18. The ’959 Patent is valid and enforceable under United States Patent Laws.

19. The ’959 Patent recognized problems with existing light emitting devices at the time of the invention of the ’959 Patent.

20. For instance, the ’959 Patent recognized that, “[c]onventionally, after the fabrication of an LED wafer is completed, the wafer is cut into many LED chips,” and “[t]he LED chips are then arranged on a pre-designed circuit board to accomplish the manufacture of light emitting devices based on different needs.” ’959 Patent at 1:38-42. However, “when the LED chips are individually wired by wire-bonding technique, the fabrication process is complicated and the conductive wire is susceptible to breakage” and thus, “the production yield is low and the cost is high.” *Id.*, 1:42-46. Accordingly, the ’959 Patent identified “a need to provide a light emitting device and a method of forming the same so as to improve the bonding quality and to reduce the fabrication cost.” *Id.*, at 1:47-49.

21. In this regard, the ’959 Patent discloses that “[i]t is an object of this invention to provide a light emitting device, which includes a plurality of light emitting diode structures wired in wafer level to form the LEDs connected in series or

in parallel so as to improve the yield and reduce the manufacture cost," and "[i]t is a further object of this invention to provide a method for forming a light emitting device, which integrates the wiring process of a plurality of light emitting diodes into the wafer fabrication to avoid the complicated processes of individual chip dicing, wire bonding, and connection." *Id.* at 1:53-57, 2:15-20.

**U.S. Patent No. 8,492,780**

22. U.S. Patent No. 8,492,780 (the "'780 Patent") is titled "Light-emitting device and manufacturing method thereof" and was issued on July 23, 2013. A true and correct copy of the '780 Patent is attached as Exhibit B.

23. The '780 Patent was filed on February 11, 2010 as U.S. Patent Application No. 12/703,964, and claims priority to Taiwan Patent Application No. 098104423, filed February 11, 2009.

24. Plaintiff is the owner of all rights, title, and interest in and to the '780 Patent, with the full and exclusive right to bring suit to enforce the '780 Patent, including the right to recover for past infringement.

25. The '780 Patent is valid and enforceable under United States Patent Laws.

26. The '780 Patent recognized problems with existing light emitting devices at the time of the invention of the '780 Patent.

27. For instance, with reference to FIG. 1 below, the '780 Patent recognized that, "because the surface of the transparent substrate 10 of the conventional light

emitting device 100 … is substantially flat and the refractive index of the transparent substrate 10 is different from the refractive index of the external environment, the total internal reflection (TIR) occurs when a light A emitted from the active layer 122." '780 Patent at 1:55-60.




FIG.1
(Related Art)

28. As such, the '780 Patent recognized that "the light extraction efficiency from [a traditional] light emitting device [ ] is reduced drastically." *Id.*, 1:61-62.

29. In view of the foregoing, the '780 Patent discloses a "light-emitting device" that comprises a "substrate" that includes "a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer," where "the sidewall of the substrate comprises a first area and a second area," and "the morphology of the first area is substantially flat and the morphology of the second area is substantially textured." *Id.*, cl. 1. According to the '780 Patent, "light extraction efficiency of the light emitting device may be enhanced by the discontinuous structure on the sidewall." *Id.*, 2:9-11.

**U.S. Patent No. 8,766,309**

30. U.S. Patent No. 8,766,309 (the "'309 Patent") is titled "Omnidirectional reflector" and was issued on July 1, 2014. A true and correct copy of the '309 Patent is attached as Exhibit C.

31. The '309 Patent was filed on November 7, 2013 as U.S. Patent Application No. 14/073,915, which is a continuation application of U.S. Patent Application No. 13/857,678, filed on Apr. 5, 2013, which is a continuation application of U.S. Patent Application No. 12/202,167, filed Aug. 29, 2008, which claims priority to Provisional Patent Application No. 61/089,796, filed Aug. 18, 2008.

32. Plaintiff is the owner of all rights, title, and interest in and to the '309 Patent, with the full and exclusive right to bring suit to enforce the '309 Patent, including the right to recover for past infringement.

33. The '309 Patent is valid and enforceable under United States Patent Laws.

34. The '309 Patent recognized problems with existing LEDs at the time of the invention of the '309 Patent.

35. For instance, the '309 Patent discloses that "reflectors have been formed as part of [an] LED in order to direct the light in a desired direction and away from any light-absorbing substrates," and "[o]ne typical reflector is a distributed Bragg reflector (DBR), which uses alternating layers of materials having different refractive indices to reflect the emitted light." '309 Patent at 1:40-45. However, the '309 Patent

discloses that, "[w]hile a DBR is helpful … it is not omnidirectional, as the reflectivity of the DBR drops when the angle of incidence of the light impacting the DBR increases relative to normal to the surface of the DBR." *Id.*, at 1:45-49. According to the '309 Patent, "[t]his drop in the efficiency of the DBR causes a corresponding drop in efficiency of the LED." *Id.*, at 1:49-50. Thus, the '309 Patent identified that "what is needed is a reflector that has a greater efficiency for a larger range of incident angles." *Id.*, at 1:51-52.

36. In this regard, the '309 Patent discloses that "[t]hese and other problems are generally solved or circumvented, and technical advantages are generally achieved, by preferred embodiments of the present invention which provide for an omnidirectional reflector incorporated with a light-emitting diode (LED)." *Id.*, at 1:56-60.

**U.S. Patent No. 9,257,604**

37. U.S. Patent No. 9,257,604 (the "'604 Patent") is titled "Light-emitting device having a patterned surface" and was issued on February 9, 2016. A true and correct copy of the '604 Patent is attached as Exhibit D.

38. The '604 Patent was filed on December 18, 2013 as U.S. Patent Application No. 14/132,819, which is a continuation application of U.S. Patent Application No. 12/646,553, filed on December 23, 2009, which is a continuation-in-part of U.S. Patent Application No. 12/222,548, filed on August 12, 2008, which claims priority to Taiwan Patent Application No. 097150633, filed on December 24,

2008.

39. Plaintiff is the owner of all rights, title, and interest in and to the ’604 Patent, with the full and exclusive right to bring suit to enforce the ’604 Patent, including the right to recover for past infringement.

40. The ’604 Patent is valid and enforceable under United States Patent Laws.

41. The ’604 Patent recognized problems with existing LEDs at the time of the invention of the ’604 Patent.

42. For instance, the ’604 Patent recognized that “[s]urface roughening technology is one of the efficient methods to enhance luminance.” ’604 Patent at 1:35-36. In particular, “[t]he ratio of the pattern width to the width between patterns of the substrate surface [ ] is generally designed to be around 1,” and thus, “a considerable portion of the substrate surface [ ] is still parallel to the surface of the active layer [ ], and the light emitted from the active layer [ ] to the parallel substrate surface is easily reflected back to the epitaxial stack because of total internal reflection (TIR) effect and absorbed by the epitaxial stack to generate heat.” *Id.*, at 1:52-59. According to the ’604 Patent, this “worsens both the light extraction efficiency and the heat dissipation problems.” *Id.*, at 1:59-61. While the ’604 Patent recognized that “the pattern is usually formed deeper in order to compensate the light loss due to the parallel (unpatterned) region,” “the high aspect ratio of the deeper pattern causes difficulty for subsequently epitaxial growth and adversely affects the epitaxial

quality." *Id.*, at 1:61-65.

43. The '604 Patent further recognized "[a]nother prior technique for roughen surface" which involved utilizing a "mechanically polishing method to form a randomly distributed rough patterns on the substrate surface." *Id.*, at 1:66-2:1. However, the '604 Patent discloses that "it is hard to control the roughened dimension, such as the depth or the width," and "the epitaxial quality is not good by growing an epitaxial layer on the randomly rough surface." *Id.*, at 2:2-4.

44. Accordingly, the '604 Patent discloses a "light-emitting device" that comprises "a substrate having a first patterned unit; and a light-emitting stack on the substrate and having an active layer with a first surface; wherein the first patterned unit, protruding in a direction from the substrate to the light-emitting stack, has side surfaces abutting with each other and substantially non-parallel to the first surface in cross-sectional view, and has a non-polygon shape in top view." *Id.*, at 2:8-15.

**U.S. Patent No. 9,847,460**

45. U.S. Patent No. 9,847,460 (the "'460 Patent") is titled "Light emitting device with reflective electrode" and was issued on December 19, 2017. A true and correct copy of the '460 Patent is attached as Exhibit E.

46. The '460 Patent was filed on March 16, 2016 as U.S. Patent Application No. 15/071,978, which is a continuation application of U.S. Patent Application No. 13/474,362, filed on May 17, 2012.

47. Plaintiff is the owner of all rights, title, and interest in and to the '460

Patent, with the full and exclusive right to bring suit to enforce the ’460 Patent, including the right to recover for past infringement.

48. The ’460 Patent is valid and enforceable under United States Patent Laws.

49. The ’460 Patent recognized problems with existing light emitting devices at the time of the invention of the ’460 Patent.

50. For instance, the ’460 Patent recognized that, “[c]urrently, the inner light-emitting efficiency of the light-emitting diode is about 50% to 80%, but a part of the light may be absorbed by the electrode or the light-emitting layer so the total light-emitting efficiency is degraded.” ’460 Patent at 1:21-25. Thus, “the mirror layer under the electrode has been provided to solve the problem.” *Id.*, at 1:25-26. However, “[w]hen the electrical current is applied into the light-emitting diode and flows through the electrode, the material of the mirror layer may be migrated to the electrode,” and “[t]he migration of the material of the mirror layer causes the increase of the resistance of electrode and lowers the light-emitting efficiency of the light-emitting diode.” *Id.*, at 1:30-35. Thus, the ’460 Patent discloses that “a barrier layer 11 is provided to prevent the migration of the material of the mirror layer 12 .….” *Id.*, at 1:35-37. Nevertheless, the ’460 Patent discloses that “in recent years, as the light from a single chip is required to emit more, the electrical current applied to the light-emitting diode is increased, and the large electrical current may destroy the barrier layer 11.” *Id.*, at 1:37-41.

51. The ’460 Patent further discloses that “[t]he conventional mirror layer 12 is formed of Al or Ag, and the conventional barrier layer 11 is formed by a single metal which can defense the migration of the mirror layer 12, such as Ti or Mo,” but “it is not easy to form a barrier layer 11 which has a uniform thickness on the mirror layer 12.” *Id.*, at 1:42-47. Moreover, the ’460 Patent discloses that, “if a high electrical current flows through the electrode, the barrier layer 11 formed by two different metals is usually still destroyed by the material of the mirror layer 12 …. and, thus, the conductivity of the electrode 4 substantially decreases.” *Id.*, at 1:53-62.

52. Accordingly, the ’460 Patent discloses “[a] light-emitting device, comprises: a semiconductor light emitting stack; an electrode on the semiconductor light emitting stack, the electrode comprising a mirror layer, an adhesion layer inserted between the mirror layer and the semiconductor light emitting stack, a bonding layer; and a plurality of pits between the bonding layer and the semiconductor light emitting stack, wherein one of the plurality of pits is not filled up by the adhesion layer.” *Id.*, at 1:66-2:6.

**U.S. Patent No. 10,038,116**

53. U.S. Patent No. 10,038,116 (the “’116 Patent”) is titled “Light-emitting device having a patterned substrate and the method thereof” and was issued on July 31, 2018. A true and correct copy of the ’116 Patent is attached as Exhibit F.

54. The ’116 Patent was filed on August 30, 2017 as U.S. Patent Application

No. 15/691,357, which is a continuation application of U.S. Patent Application No. 14/986,791, filed on Jan. 4, 2016, which is a continuation application of U.S. Patent Application No. 13/618,544, filed on Sep. 14, 2012, issued as U.S. Pat. No. 9,231,151, which is a continuation application of U.S. Patent Application No. 12/860,599, filed on Aug. 20, 2010, issued as U.S. Pat. No. 8,648,522, which is a continuation application of U.S. Patent Application No. 11/878,961, filed Jul. 30, 2007, issued as U.S. Pat. No. 7,825,577, which claims priority to Taiwan Patent App. No. 095127924, filed Jul. 28, 2006.

55. Plaintiff is the owner of all rights, title, and interest in and to the ’116 Patent, with the full and exclusive right to bring suit to enforce the ’116 Patent, including the right to recover for past infringement.

56. The ’116 Patent is valid and enforceable under United States Patent Laws.

57. The ’116 Patent recognized problems with existing LEDs at the time of the invention of the ’116 Patent.

58. For instance, the ’116 Patent recognized that “[s]urface roughening has been an effective means to enhance the light-extraction efficiency, whether on a substrate or on a top semiconductor layer.” ’116 Patent at 1:38-40. However, the ’116 Patent discloses that, “[a]lthough the light extraction efficiency is enhanced because of the roughened surface of the substrate [], the surface damages such as the alteration of the surface composition and the lattice distortion are resulted from the

roughening process as well." *Id.*, at 1:50-54. And, in some instances, "part of the mask materials or the reactive ions are sputtered onto and even doped into a certain depth of the substrate, therefore the quality of the epitaxy layer deposited thereafter is downgraded." *Id.*, at 1:54-58. The '116 Patent further discloses that "[t]he mechanical polishing process also damages the lattice structure of the substrate surface, such that the quality of the successively grown semiconductor layer, such GaN, is worse, and the internal quantum efficiency is lowered." *Id.*, at 1:58-62.

59. Accordingly, the '116 Patent claims a "light-emitting device" that comprises "a textured substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire," and "a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer," where "one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side." *Id.*, at Cl. 1.

**U.S. Patent No. 10,439,108**

60. U.S. Patent No. 10,439,108 (the "'108 Patent") is titled "LED light emitting device for display device, and display device" and was issued on October 8, 2019. A true and correct copy of the '108 Patent is attached as Exhibit G.

61. The ’108 Patent was filed on July 27, 2018 as U.S. Patent Application No. 16/047,979, which is a continuation of U.S. Patent Application No. 14/751,393, filed on Jun. 26, 2015, which claims priority to Chinese Patent Application No. 201510009581.X, filed on Jan. 8, 2015.

62. Plaintiff is the owner of all rights, title, and interest in and to the ’108 Patent, with the full and exclusive right to bring suit to enforce the ’108 Patent, including the right to recover for past infringement.

63. The ’108 Patent is valid and enforceable under United States Patent Laws.

64. The ’108 Patent recognized problems with existing light emitting devices at the time of the invention of the ’108 Patent.

65. For instance, the ’108 Patent discloses the following:

> [A] quantum dot film is fabricated by including the cadmium in a quantum dot material to improve the light emission efficiency and brightness of the quantum dot material, but the heavy metal cadmium is a highly poisonous substance, so the concentration of the quantum dot material in the quantum dot film has to be lowered. However if the concentration of the quantum dot material in the quantum dot film is low, then there may be a considerable gap between adjacent quantum dot components, and taking a blue LED as an example, light in complementary colors to blue light is red light and green light, and when the blue light emitted by the blue LED passes the quantum dot film, the majority of the blue light may pass the gap between the adjacent quantum dot components, and only the minority of the blue light may excite the quantum dot material to generate red light and green light mixed with the blue light into white light, thus resulting in a low utilization ratio of the blue light. Moreover too much of the blue light is transmitted so that the proportion of the blue light in the white light generated from the mixing is high, and the proportion of the red light and the green light is low, thus making the white light generated from the mixing bluish as a whole, which may degrade the light emission effect of the LED light emitting device.

’108 Patent at 2:58-3:14.

66. In view of the foregoing, the ’108 Patent discloses “an LED light emitting device for a display device, and a display device so as to improve both the

utilization ratio of light emitted by an LED lamp and the light emission effect of the LED light emitting device." *Id.*, at 3:15-29.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,101,959**

67. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

68. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '959 Patent in violation of 35 U.S.C. § 271 et seq., directly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Sony Bravia 7 XR70, among other substantially similar products (collectively, the "'959 Accused Products").

69. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '959 Patent in connection with one of the '959 Accused Products (e.g., the Sony Bravia 7 XR70). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '959 Accused Products that it obtains during discovery.

70. ***1(a): A light-emitting device, comprising: a first part epitaxial layer having a first upmost top surface and a first width;***— Defendants, directly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '959 Accused Products that are covered by claim 1 of the '959 Patent.

For instance, the Sony Bravia 7 XR70 is a light-emitting device, as shown below.










Further, the Sony Bravia 7 XR70 comprises a first part epitaxial layer having a first upmost top surface and a first width, as shown in Figure 1B – 1 to Figure 1B – 3 below:




*Figure 1B - 1*




*Figure 1B - 2*




*Figure 1B - 3*

71. ***1(b): one or more second part epitaxial layers, each second part epitaxial layer, laterally separated from the first part epitaxial layer, able to emitting light under a forward bias voltage and having a second upmost top surface and a second width; and***— The Sony Bravia 7 XR70 comprises one or more second part

epitaxial layers, each second part epitaxial layer laterally separated from the first part epitaxial layer, able to emit light under a forward bias voltage and having a second upmost top surface and a second width, as shown in Figure 1B – 4 to Figure 1B – 6 below:




*Figure 1B - 4*




*Figure 1B - 5*




*Figure 1B - 6*

72. ***1(c): an underlayer formed below the first upmost top layer and the each second upmost top layer, and electrically connected to the first part epitaxial layer and the each second part epitaxial layer,—*** The Sony Bravia 7 XR70 comprises an underlayer formed below the first upmost top layer and the each second upmost top layer and electrically connected to the first part epitaxial layer and the each second part epitaxial layer, as shown in Figure 1B – 7 to Figure 1B – 8 below:




*Figure 1B - 7*




*Figure 1B - 8*

73. ***1(d)**: **wherein the first upmost top layer has an elevation substantially equal to that of the second upmost top surface, and the first width is substantially equal to the second width.***— In the Sony Bravia 7 XR70, the first upmost top layer has an elevation substantially equal to that of the second upmost top layer and the first width is substantially equal to the second width, as shown in Figure 1B – 9 to Figure 1B – 10 below:




*Figure 1B – 9*




*Figure 1B – 10*

74. Additionally, since the filing and/or service of the Original Complaint, Defendants' infringement of the '959 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

75. Additional allegations regarding Defendants' knowledge of the '959 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

76. Defendants' infringement of the '959 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

77. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '959 Patent.

78. In this regard, Plaintiff is a non-practicing entity that does not make, use, sell, offer for sale, or import products and therefore has no independent obligation to mark products under 35 U.S.C. § 287(a).

79. Upon information and belief, to the extent Plaintiff's predecessors-in-

interest made, offered for sale, sold, or imported products practicing any of the Patents-in-Suit, they complied with the applicable marking requirements of § 287(a), including through virtual patent marking.

80. For instance, before assigning certain of the Patents-in-Suit to Plaintiff, Epistar Corporation ("Epistar") maintained a website identifying patents associated with its products. Archived versions of Epistar's website confirm that its product listing pages included a "Patent number" button, although the patent information accessible through the "Patent number" button is no longer available in the archived versions. *See, e.g.*, Ex. H; Ex. I. Epistar subsequently merged into Ennostar Corporation, which continues to maintain a virtual patent marking webpage at https://www.ennostar.com/en/patents. Ex. J. That webpage expressly identifies at least two of the Patents-in-Suit—namely, U.S. Patent Nos. 9,257,604 and 8,492,780, among other patents—in connection with certain Ennostar products. On information and belief, based on Epistar's historical patent marking practice and Ennostar's continuation of that practice, Epistar and its licensees complied with the applicable marking requirements of 35 U.S.C. § 287(a), including through virtual patent marking, to the extent Epistar and/or its licensees made, offered for sale, sold, or imported products practicing the Patents-in-Suit previously owned by Epistar, including by making reasonable efforts to ensure compliance with the applicable marking requirements by its licensees.

81. Further, upon information and belief, prior to the assignment of certain

of the Patents-in-Suit (e.g., the ’108 Patent) to Plaintiff, Hisense Electric Co., Ltd., Hisense USA Corporation, and/or Hisense International Co., Ltd. (collectively, “Hisense”) complied with any applicable marking requirements of 35 U.S.C. § 287(a), to the extent such requirements applied to any products made, offered for sale, sold, or imported by Hisense or its licensees, including by making reasonable efforts to ensure compliance with the applicable marking requirements by its licensees.

82. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants’ infringement of the ’959 Patent, including, without limitation, a reasonable royalty.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,492,780**

83. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

84. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the ’780 Patent in violation of 35 U.S.C. § 271 et seq., directly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Sony BRAVIA 2 II 43” class 4K HDR LED, among other substantially similar products (the “’780 Accused Products”).

85. As one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ’780 Patent in connection with one of the ’780 Accused Products (e.g., Sony BRAVIA 2 II 43”

class 4K HDR LED). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ’780 Accused Products that it obtains during discovery.

86. ***1(a): A light emitting device, comprising: a substrate, wherein the substrate comprises a first major surface, a second major surface, and a sidewall; and*** — Defendants, directly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the ’780 Accused Products that are covered by claim 1 of the ’780 Patent.

For instance, the Sony BRAVIA 2 II 43” class 4K HDR LED is a light emitting device, as shown below.









Further, the Sony BRAVIA 2 II 43" class 4K HDR LED comprises a substrate, wherein the substrate comprises a first major surface, a second major surface and a sidewall, as shown in Figure 1A-1 to Figure 1A-2 below:




*Figure 1A – 1*




*Figure 1A – 2*

87. ***1(b): a light emitting stack layer formed on the first major surface of the substrate, comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer;***— The Sony BRAVIA 2 II 43" class 4K HDR LED comprises a light emitting stack layer formed on the first major surface of the substrate comprising a first conductive-type semiconductor layer, an active layer and a second conductive-type semiconductor layer, as shown in Figure 1A – 3 to Figure 1A – 4 below:




*Figure 1A - 3*




*Figure 1A – 4*

88. ***1(c): wherein the sidewall of the substrate comprises a first area and a second area;***— In the Sony BRAVIA 2 II 43" class 4K HDR LED, the sidewall of the substrate comprises a first area and a second area, as shown in Figure 1A – 5 to Figure 1A – 6 below:




*Figure 1A – 5*




*Figure 1A– 6*

89. ***1(d): wherein the morphology of the first area is substantially flat and the morphology of the second area is substantially textured.***— In the Sony BRAVIA 2 II 43” class 4K HDR LED the morphology of the first area is substantially flat, and the morphology of the second area is substantially textured, as shown in Figure 1A–5 to Figure 1A– 6 above.

90. Additionally, since the filing and/or service of the Original Complaint, Defendants’ infringement of the ’780 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

91. Additional allegations regarding Defendants’ knowledge of the ’780 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

92. Defendants’ infringement of the ’780 Patent is exceptional and entitles Plaintiff to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

93. As set forth above for Count I, Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ’780 Patent.

94. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants’ infringement of the ’780 Patent, including, without limitation, a reasonable royalty.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,766,309

95. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

96. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the ’309 Patent in violation of 35 U.S.C. § 271 et seq., directly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Sony BRAVIA 2 II 43” class 4K HDR LED, among other substantially similar products (“’309 Accused Products”).

97. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ’309 Patent in connection with one of the ’309 Accused Products (e.g., Sony BRAVIA 2 II 43” class 4K HDR LED). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ’309 Accused Products that it obtains during discovery.

98. ***1(a): A device comprising: a substrate;*** — Defendants, directly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the ’309 Accused Products that are covered by claim 1 of the ’309 Patent.

For instance, the Sony BRAVIA 2 II 43” class 4K HDR LED is a device, as shown below.










Further, the Sony BRAVIA 2 II 43" class 4K HDR LED comprises a substrate, as shown in Figure 1C – 1 (*see also* Figure 1C – 2):




*Figure 1C - 1*

99. ***1(b)*: *a light-reflective layer disposed over the substrate;*** — The Sony BRAVIA 2 II 43" class 4K HDR LED comprises a light-reflective layer disposed over the substrate, as shown in Figure 1C – 2 to Figure 1C – 4 below.




*Figure 1C - 2*




*Figure 1C – 3*

| Quant. Type | Element | Line | keV | Mass% | Atom% | K ratio | Standard Data | ZAF |
|---|---|---|---|---|---|---|---|---|
| Automatically identified | C | K | 0.277 | 20.57±0.12 | 31.71±0.19 | 8.58 | Std-less | 1.01/4.28/1.00 |
| Automatically identified | O | K | 0.525 | 42.15±0.24 | 48.78±0.27 | 36.50 | Std-less | 0.96/2.16/1.00 |
| Automatically identified | Al | K | 1.486 | 2.62±0.05 | 1.80±0.03 | 3.29 | Std-less | 0.99/1.46/0.99 |
| Automatically identified | Si | K | 1.739 | 16.02±0.10 | 10.56±0.07 | 22.91 | Std-less | 0.97/1.30/1.00 |
| Automatically identified | Ti | K | 4.508 | 17.48±0.14 | 6.76±0.06 | 26.99 | Std-less | 1.16/1.01/1.00 |
| Automatically identified | Fe | K | 6.398 | 1.16±0.06 | 0.38±0.02 | 1.72 | Std-less | 1.19/1.01/1.00 |
| Total | | | | 100.00 | 100.00 | | | |
| Spc_001 | | | | | | | | Fitting ratio 0.0131 |

*Figure 1C - 4*

100. ***1(c): a photonic crystal layer disposed over the substrate, the photonic crystal layer being configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially perpendicular to the substrate; and*** — The Sony BRAVIA 2 II 43” class 4K HDR LED comprises a photonic crystal layer disposed over the substrate, where the photonic crystal layer is configured to reflect light in a plane substantially parallel with the substrate while allowing light to travel unreflected in a direction substantially

perpendicular to the substrate. *See, e.g.,* Figure 1C – 5 to Figure 1C – 7 below:




*Figure 1C - 5*




*Figure 1C – 6*




*Figure 1C - 7*

101. ***1(d): a light-emitting diode (LED) disposed over the substrate, wherein the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and wherein the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED.*** — The Sony BRAVIA 2 II 43" class 4K HDR LED comprises an LED disposed over the substrate, where the LED includes a light-emitting layer disposed between two doped layers having different types of conductivity, and where the light-reflective layer and the photonic crystal layer are disposed between the substrate and the LED. *See, e.g.,* Figure 1C – 8 to Figure 1C – 10 below:




*Figure 1C – 8*




*Figure 1C - 9*




*Figure 1C -10*

102. Additionally, since the filing and/or service of the Original Complaint, Defendants' infringement of the '309 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

103. Additional allegations regarding Defendants' knowledge of the '309 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

104. Defendants' infringement of the '309 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

105. As set forth above for Count I, Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '309 Patent.

106. Plaintiff is entitled to recover from Defendants all damages that Plaintiff

has sustained as a result of Defendants' infringement of the '309 Patent, including, without limitation, a reasonable royalty.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,257,604**

107. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

108. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '604 Patent in violation of 35 U.S.C. § 271 et seq., directly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Sony BRAVIA 2 II 43" class 4K HDR LED, among other substantially similar products ("'604 Accused Products").

109. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '604 Patent in connection with one of the '604 Accused Products (e.g., Sony BRAVIA 2 II 43" class 4K HDR LED). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '604 Accused Products that it obtains during discovery.

110. ***1(a): A light-emitting device comprising: a substrate having a top surface and a first patterned unit bulged on the top surface; and*** — Defendants, directly, make, use, sell, and/or offer to sell in the United States, and/or import into

the United States, the ’604 Accused Products that are covered by claim 1 of the ’604 Patent.

111. For instance, the Sony BRAVIA 2 II 43” class 4K HDR LED is a light-emitting device comprising a substrate having a top surface and a first patterned unit bulged on the top surface, as shown in Figure 1D – 1 below:




*Figure 1D - 1*

112. ***1(b)*: *a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface;*** — The Sony BRAVIA 2 II 43” class 4K HDR LED comprises a light-emitting stack formed on the substrate and having an active layer with a first surface substantially parallel to the top surface, as shown in Figure 1D – 2 to Figure 1D – 3 below.




*Figure 1D – 2*




*Figure 1D – 3*

113. ***1(c): wherein a base of the first patterned unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned unit has a vertex, a***

***first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex.*** — In the Sony BRAVIA 2 II 43" class 4K HDR LED, a base of the first patterned unit has a non-polygon shape in a top view, and in a cross-sectional view the first patterned unit has a vertex, a first inclined line segment, and a second inclined line segment, and the first inclined line segment and the second inclined line segment connect at the vertex. *See, e.g.,* Figure 1D – 4 to Figure 1D – 5 below:




*Figure 1D - 4*




*Figure 1D – 5*

114. Additionally, since the filing and/or service of the Original Complaint, Defendants' infringement of the '604 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

115. Additional allegations regarding Defendants' knowledge of the '604 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

116. Defendants' infringement of the '604 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

117. As set forth above for Count I, Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '604 Patent.

118. Plaintiff is entitled to recover from Defendants all damages that Plaintiff

has sustained as a result of Defendants' infringement of the '604 Patent, including, without limitation, a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,847,460

119. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

120. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '460 Patent in violation of 35 U.S.C. § 271 et seq., directly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Sony BRAVIA 2 II 43" class 4K HDR LED, among other substantially similar products (collectively, the "'460 Accused Products").

121. By way of non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '460 Patent in connection with one of the '460 Accused Products (e.g., Sony BRAVIA 2 II 43" class 4K HDR LED). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '460 Accused Products that it obtains during discovery.

122. ***1(a): A light emitting device, comprising: a semiconductor light emitting stack;*** — Defendants, directly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '460 Accused Products that are covered by claim 1 of the '460 Patent.

123. For instance, the Sony BRAVIA 2 II 43" class 4K HDR LED is a light emitting device comprising a semiconductor light emitting stack, as shown in Figure 1E-1 below:




*Figure 1E – 1*

124. ***1(b): an electrode on the semiconductor light emitting stack, the electrode comprising:*** — The Sony BRAVIA 2 II 43" class 4K HDR LED includes an electrode on the semiconductor light emitting stack, as shown in Figure 1E – 2 below:




*Figure 1E - 2*

125. ***1(c): a mirror layer; an adhesion layer inserted between the mirror layer and the semiconductor light emitting stack; and a bonding layer on the mirror layer; and*** — The Sony BRAVIA 2 II 43" class 4K HDR LED includes a mirror layer, an adhesion layer between the mirror layer and the semiconductor light emitting stack, and a bonding layer on the mirror layer, as shown in Figure 1E – 3 below:




*Figure 1E - 3*

126. ***1(d): a plurality of pits between the bonding layer and the semiconductor light emitting stack;*** — The Sony BRAVIA 2 II 43" class 4K HDR LED includes a plurality of pits between the bonding layer and the semiconductor light emitting stack, as shown in Figure 1E – 4 below:




*Figure 1E - 4*

127. ***1(e): wherein one of the plurality of pits is not filled up by the adhesion layer.*** — In the Sony BRAVIA 2 II 43" class 4K HDR LED, one of the plurality of pits is not filled up by the adhesion layer, as shown in Figure 1E – 5 below:



*Figure 1E - 5*

128. Additionally, since the filing and/or service of the Original Complaint, Defendants' infringement of the '460 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

129. Additional allegations regarding Defendants' knowledge of the '460 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

130. Defendants' infringement of the '460 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

131. As set forth above for Count I, Plaintiff is in compliance with any

applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ’460 Patent.

132. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants’ infringement of the ’460 Patent, including, without limitation, a reasonable royalty.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 10,038,116**

133. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

134. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the ’116 Patent in violation of 35 U.S.C. § 271 et seq., directly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but not limited to the Sony BRAVIA 7 XR70, among other substantially similar products (collectively, the “’116 Accused Products”).

135. As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the ’116 Patent in connection with one of the ’116 Accused Products (e.g., the Sony BRAVIA 7 XR70). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the ’116 Accused Products that it obtains during discovery.

136. ***1(a): A light emitting device, comprising: a textured***

***substrate comprising a plurality of textured structures, wherein the plurality of textured structures and the textured substrate are both composed of sapphire; and*** — Defendants, directly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '116 Accused Products that are covered by claim 1 of the '116 Patent.

137. For instance, the Sony BRAVIA 7 XR70 is a light emitting device comprising a textured substrate including a plurality of textured structures, where the plurality of textured structures and the textured substrate are both composed of sapphire. *See, e.g.,* Figure 1F-1 to Figure 1F-2 below:




*Figure 1F – 1*




*Figure 1F – 2*

138. ***1(b): a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer,*** — The Sony BRAVIA 7 XR70 includes a light-emitting stack overlaying the textured substrate, comprising a first conductivity type semiconductor layer, an active layer, and a second conductivity type semiconductor layer, as shown in Figure 1F – 3 below:




*Figure 1F – 3*

139. ***1(c): wherein one of the plurality of textured structures comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side.*** — The Sony BRAVIA

7 XR70 includes one of the plurality of textured structures that comprises a top portion and a bottom portion, wherein a first distance between a first projection of the top portion on the bottom portion and the bottom portion at one side is different from a second distance between a second projection of the top portion on the bottom portion and the bottom portion at another side as seen in Figure 1F – 4 to Figure 1F - 5:




*Figure 1F – 4*




*Figure 1F - 5*

140. Additionally, since the filing and/or service of the Original Complaint,

Defendants' infringement of the '116 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

141. Additional allegations regarding Defendants' knowledge of the '116 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

142. Defendants' infringement of the '116 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

143. As set forth above for Count I, Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '116 Patent.

144. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '116 Patent, including, without limitation, a reasonable royalty.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 10,439,108**

145. Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

146. Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '108 Patent in violation of 35 U.S.C. § 271 et seq., directly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license products, including but

not limited to the Sony Bravia 7 XR70, among other substantially similar products (collectively, the "'108 Accused Products").

147. As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '108 Patent in connection with one of the '108 Accused Products (e.g., the Sony Bravia 7 XR70). This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '108 Accused Products that it obtains during discovery.

148. ***1(a): An LED light emitting device, comprising a quantum dot film, a dichroic layer, and a blue LED emitter, wherein:*** — Defendants, directly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the '108 Accused Products that are covered by claim 1 of the '108 Patent.

For instance, the Sony Bravia 7 XR70 is an LED light emitting device comprising a quantum dot film, a dichroic layer, and a blue LED emitter, as shown in Figure 1H-1 to Figure 1H-2 below:



*Figure 1H – 1*




*Figure 1H - 2*

149. ***1(b): the blue LED emitter is configured to emit a blue light toward the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce light of longer wavelength;*** — In the Sony Bravia 7 XR70, the blue LED emitter is configured to emit a blue light towards the quantum dot film and excite a quantum dot material encapsulated in the quantum dot film to produce light of longer wavelength, as shown in Figure 1H – 3 to Figure 1H – 6 below:



*Figure 1H – 3*




*Figure 1H - 4*




*Figure 1H - 5*




*Figure 1H – 6 (EDS Measurement of the quantum dot material)*

150. ***1(c): the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer; and*** — In the Sony Bravia 7 XR70, the quantum dot film is disposed between the blue LED emitter and the dichroic layer such that the blue light emitted from the blue LED emitter passes the quantum dot film before reaching the dichroic layer, as shown in Figure 1H – 7 below:




*Figure 1H - 7*

151. ***1(d): the dichroic layer is configured to: substantially reflect a first spectral portion of the blue light emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, wherein the first spectral portion is determined by a preset spectral band;***— In the Sony Bravia 7 XR70, the dichroic layer is configured to substantially reflect a first spectral portion of the blue light, emitted from the blue LED emitter and arriving at the dichroic layer towards the quantum dot film, where the first spectral portion is determined by a preset band (e.g., 400nm-435nm and/or 470nm-485nm), as shown in Figure 1H – 8 and Figure 1H – 9 below:




*Figure 1H – 8*




*Figure 1H – 9*

152. ***1(e): substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer; and***— In the Sony Bravia 7 XR70, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, a second spectral portion of the blue light outside of the preset spectral band of the blue light emitted from the blue LED emitter and arriving at the dichroic layer (e.g., 430nm-470nm), as shown in Figure 1H – 10 and Figure 1H – 11 below:




*Figure 1H – 10*




*Figure 1H – 11*

153. ***1(f): substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer.***— In the Sony Bravia 7 XR70, the dichroic layer is configured to substantially transmit, towards outside of the LED light emitting device, the light of longer wavelength produced by the quantum dot film and arriving at the dichroic layer (e.g., red and green light), as shown in Figure 1H – 12 and Figure 1H – 13 below:




*Figure 1H - 12*




*Figure 1H – 13*

154. Additionally, since the filing and/or service of the Original Complaint, Defendants' infringement of the '108 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

155. Additional allegations regarding Defendants' knowledge of the '108 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

156. Defendants' infringement of the '108 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

157. As set forth above for Count I, Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '108 Patent.

158. Plaintiff is entitled to recover from Defendants all damages that Plaintiff has sustained as a result of Defendants' infringement of the '108 Patent, including, without limitation, a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. That Judgment be entered that Defendants have infringed at least one or more claims of the Patents-in-Suit, directly, literally and/or under the doctrine of equivalents;

B. An award of damages sufficient to compensate Plaintiff for Defendants' infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendants' willful infringement since the filing and/or service of the Original Complaint;

C. That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D. Costs and expenses in this action;

E. An award of prejudgment and post-judgment interest; and

F. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues so triable.

Dated: October 30, 2026

Respectfully submitted,

By: /s/ Jack Shaw
Jack Shaw (CA SBN 309382)
jshaw@cjsjlaw.com
**CHERRY JOHNSON**
**SIEGMUND JAMES PC**
3000 El Camino Real
Four Palo Alto Square, Suite 200
Palo Alto, CA 94306

Sean M. Sullivan (*pro hac vice* forthcoming)
sullivan@ls3ip.com
Cole B. Richter (*pro hac vice* forthcoming)
richter@ls3ip.com
Michael P. Boyea (*pro hac vice* forthcoming)
boyea@ls3ip.com
Jae Y. Pak (*pro hac vice* forthcoming)
pak@ls3ip.com
Andrew Gerla (*pro hac vice* forthcoming)
gerla@ls3ip.com
**LEE SULLIVAN SHEA & SMITH LLP**
656 West Randolph Street, Floor 5W
Chicago, IL 60661

***Attorneys for Plaintiff***
***Tau Ceti Ventures LLC***